IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JUDITH SALAZAR, | ) |
| | ) |
| Plaintiff, | ) Case No. |
| | ) |
| v. | ) |
| | ) |
| COOK COUNTY SHERIFF'S OFFICE | ) |
| and COUNTY OF COOK, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## COMPLAINT

Plaintiff, Judith Salazar, by her attorneys, alleges the following against Defendants, Cook County Sheriff's Office and the County of Cook:

**Parties, Jurisdiction and Venue**

1. This is an action to remedy sex discrimination and retaliation.

2. Judith Salazar, while at work as a correctional officer in the Cook County Jail, was subjected to sexual harassment by her work partner. She was then subjected to retaliatory harassment for having reported the sexual harassment she experienced—and then *additional* harassment for having reported that retaliatory harassment.

3. Judith Salazar ("Salazar") has been employed as a correctional officer at the Cook County Jail since 2007.

4. Salazar is a woman.

5. Defendant Cook County Sheriff's Office (the CCSO) is a unit of local government, organized under 55 ILCS 5/3-6001–6036, with responsibility and authority for running the Cook County Jail (aka the Cook County Department of Corrections).

1

6. Defendant County of Cook, Illinois (the "County") is a body politic and corporate, organized under Illinois' County Code, 55 ILCS 5/1-1001 *et seq.*

7. The County owns the Cook County Jail.

8. The duties of operating the jail are shared between the County and the CCSO.

9. The County is a necessary party to this case by virtue of its responsibility to indemnify the CCSO for monetary amounts recovered by plaintiff through this action. *Carver v. Sheriff of La Salle County*, 324 F.3d 947 (7th Cir. 2003).

10. This lawsuit is brought under Title VII of the Civil Rights Act of 1964, as amended. Accordingly, this Court has jurisdiction to hear this case pursuant to 28 U.S.C. § 1331 ("federal question").

11. Plaintiff also brings claims under the Illinois Human Rights Act as amended, codified at 775 ILCS 5/6-101 ("IHRA"). This Court has supplemental jurisdiction over Plaintiff's IHRA claims, pursuant to 28 U.S.C. § 1367, because these claims are so related to the Title VII claims that they form part of the same case or controversy under Article III of the United States Constitution

12. Venue is proper in this District under 28 U.S.C. § 1391(b) because all of the events giving rise to the claims asserted herein occurred in Illinois and in this District.

**Facts**

13. In early August 2018, Salazar began working in the "Tails of Redemption" program at the Cook County Jail ("the jail"), which was a program in Division 9 of the jail with its own tier in the North Tower. It was intended to achieve the dual objectives of redeeming inmates and rescuing dogs who were at risk for being euthanized.

14. On or around August 13, 2018, Salazar's new partner in the program, Officer Antonio Ferguson, texted her requesting "sexy pics."

15. Salazar rejected his advances, writing him, "I don't do sexy pics."

16. A few days later, on or around August 17, 2018, Ferguson said to her words to the effect of "let me get in your pants, let me get in you" several times. Ferguson made these comments directly in front of an inmate.

17. Salazar told Ferguson to stop, repeatedly.

18. Later that shift (which was the next day because they worked the overnight shift), Ferguson yelled to a co-worker Salazar was walking with, saying "she's all mine now" repeatedly.

19. On or around August 18, 2018, Salazar reported what Ferguson had done to Sgt. Derrick Rhodes, who was a sergeant in the Tails of Redemption ("TOR") program.

20. On or around August 20, 2018, Ferguson (the man who had harassed Salazar) was kicked out of the TOR program.

21. Shortly thereafter, a lieutenant in the jail, Lt. Brian Bialczak asked her, at Roll Call in front of other officers, "why the f--- did you get Ferg kicked out of the program?"

22. From that day forward, officers in Division 9 on the 11pm-7am shift began a campaign of harassment against Salazar which persisted for eight months. As part of this campaign of harassment:

   a. Officers would say things like "snitches get stitches."

   b. Officers would ostracize her and say out loud in front of her, "don't talk to Salazar. She'll VanDyke your a--."

   c. Officers would warn her that no one would back her up if she was threatened or attacked by an inmate.

   d. Lt. Bialczak would falsely tell her that she was "mandated" to stay at work when her shift was done. When the next shift would arrive, the next shift's Supervisor would tell her she was not in fact needed.

3

      e. Lt. Bialczak would, often, not send anyone to cover for her so that she could take a break—meaning she would not take a break all shift.

23. Salazar reported the retaliation she was experiencing to Sgt. Rhodes, Chief Tarry Williams, and Human Resources' Supervisor Mary Robinson.

24. The harassment did not stop—it continued. Examples include:

      a. In September 2018, Lt. Bialczak sent a new officer as Salazar's partner, to "watch her." This officer would do things in an attempt to get her in trouble or kicked out of the TOR program, like leaving the tier keys in unauthorized places.

      b. Sgt. Michael Manade and Lt. Bialczak would threaten her in Roll Call, telling her and everyone else that superiors would always find out about reports made to "higher authorities" and that the person who had made the report would be "dealt with."

25. On September 26, 2018, Salazar reported all the above-described harassment and retaliation to Superintendent Jason Cianciarulo.

26. Nevertheless, the retaliation continued.

27. On October 17, 2018, Salazar made complaints to the CCSO's Office of Professional Review about the harassment and subsequent retaliation.

28. Nevertheless, the retaliation continued. For example, between November 30 and December 2, 2018, Officer Ferguson (who had harassed Salazar) and Lt. Bialczak removed the inmate in front of whom Ferguson had harassed Salazar from his cell and tried to get the inmate to make false claims about Salazar. This caused Salazar to fear for her safety within the jail, knowing that an officer and a lieutenant were conspiring with an inmate to cause her harm.

29. On December 7, 2018, Salazar asked Mary Robinson to be moved out of Division 9 because the TOR program was on hiatus, which meant she was working directly with Ferguson (and his allies), and she feared for her safety.

30. On December 13, 2018, Salazar submitted the transfer request to Chief Tarry Williams.

31. The next day, Salazar was transferred to Division 5.

32. Salazar did not wish to be transferred out of the TOR Program—just out of Division 9 while the TOR program was suspended.

33. On January 2, 2019, Officer Monique Michel who did roster management for the TOR program, asked Salazar to call her, which Salazar did the next morning. Officer Michel told Salazar the TOR program was re-opening in two weeks and asked if Salazar was coming back, to which Salazar replied "absolutely."

34. However, Salazar heard nothing more about returning to the TOR program.

35. Salazar emailed Officer Michel on January 22, 2019 but Officer Michel did not respond.

36. Salazar asked Mary Robinson about returning to TOR as well. Robinson said she would get back to her by close of business on February 1, 2019.

37. 4 days later, Robinson told Salazar she would not be returned to the TOR program.

38. On April 3, 2019, Salazar requested again to be returned to the program, this time writing to Mary Robinson, Chief Williams and Matthew Burke (Chief of Staff and attorney for the Sheriff).

39. Despite her many requests, Salazar was never returned to the TOR program.

40. On April 24, 2019, Salazar was seriously injured when she fell on stairs that had been left wet from power washing.

41. Salazar would not have been injured if she had been working in the TOR program.

42. Salazar has not been able to return to work since her injury.

**Count I: Title VII Violation (Sex Discrimination)**

43. Plaintiff re-alleges paragraphs 1-42 as if re-typed here.

44. Under Title VII, it is unlawful for an employer to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of her sex; or to limit, segregate, or classify its employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect an employee's status because of her sex. 42 U.S.C. § 2000e-2(a).

45. Title VII prohibits harassment in the workplace that is based on sex, if it is severe or pervasive enough that it creates a hostile work environment.

46. Salazar was subjected to harassment based on her sex by Officer Ferguson.

47. The harassment was severe: Ferguson was sexually aggressive toward Salazar in front of an inmate, which would suggest to that inmate (and others) that they could do the same thing—or worse—to her.

48. Prior to Ferguson's harassment of Salazar, sexual violence and verbal harassment toward women (whether toward correctional officers, public defenders, or other jail or County employees) had been very common in the jail. Such violence and verbal harassment are currently the subject of a class action pending in this District before Judge Kennelly—*Howard v. Cook County Sheriff's Office*, 17-cv-08146, as well as the subject of other suits by individuals such as *Ramos v. Cook County Sheriff's Office*, 18-cv-274.

49. The CCSO failed to act reasonably to prevent Ferguson's harassment before it occurred: the CCSO had allowed a culture where men, whether guards or inmates, knew they could harass women within the jail's walls with impunity.

50. Salazar was damaged physically, emotionally, and financially by Defendant's conduct.

51. As a result, Defendant CCSO violated Title VII.

52. Salazar exhausted her administrative remedies under Title VII: she filed a Charge of Discrimination with the EEOC on April 29, 2019; received a right-to-sue letter on or around September 13, 2019; and is filing this lawsuit within 90 days thereof.

53. Salazar has had to retain an attorney to help her vindicate the violation of her rights.

## Count 2: Title VII Violation (Retaliation)

54. Plaintiff re-alleges paragraphs 1-53 as if re-written here.

55. Under Title VII's anti-retaliation provisions, it is unlawful for an employer to discriminate against any of its employees because she opposed an unlawful employment practice. 42 U.S.C. § 2000e -3.

56. Title VII prohibits retaliatory harassment if it is severe or pervasive enough that it creates a hostile work environment.

57. Salazar opposed an unlawful employment practice when she reported to her superiors and to HR that she had been sexually harassed by Ferguson.

58. As a result of that reporting, she experienced retaliatory harassment from co-workers, sergeants and lieutenants.

59. Salazar again (on multiple occasions) opposed an unlawful employment practice when she reported to superiors, Human Resources, and the Office of Professional Review that she had been experiencing retaliation for having reported Ferguson.

60. Instead of stopping the retaliatory harassment, those reports led to more retaliatory harassment.

61. The harassment was severe: as just one example, she was told she would need "stitches" for her "snitching."

62. The harassment was pervasive: it happened on a near-daily basis.

63. The harassment created a hostile work environment for Salazar.

64. Salazar suffered through this hostile work environment from August 2018-April 2019.

65. In addition to subjecting her to a retaliatory hostile work environment, the CCSO retaliated against Salazar for complaining about harassment (sexual and retaliatory) by refusing to return her to the TOR program.

66. Salazar was damaged physically, emotionally, and financially by Defendants' conduct.

67. As a result, Defendants violated Title VII.

68. Salazar exhausted her administrative remedies under Title VII: she filed a Charge of Discrimination with the EEOC on April 29, 2019; received a right-to-sue letter on or around September 13, 2019; and is filing this lawsuit within 90 days thereof.

### Count 3: Illinois Human Rights Act Violation (Sexual Harassment)

69. Plaintiff re-alleges paragraphs 1-53 as if re-typed here.

70. Defendant's conduct also violates the Illinois Human Rights Act.

71. Plaintiff exhausted her administrative remedies with the Illinois Department of Human Rights: she filed a Charge of Discrimination with the EEOC, which was cross-filed at the IDHR; received a right-to-sue letter from the EEOC and sent it to the IDHR; received a notice of dismissal from the IDHR on or around November 8, 2019; and is filing this suit within 90 days thereof.

### Count 4: Illinois Human Rights Act Violation (Retaliation)

72. Plaintiff re-alleges paragraphs 1-71 as if re-typed here.

73. Defendant's conduct also violates the Illinois Human Rights Act.

74. Plaintiff exhausted her administrative remedies with the Illinois Department of Human Rights: she filed a Charge of Discrimination with the EEOC, which was cross-filed at the IDHR; received a right-to-sue letter from the EEOC and sent it to the IDHR; received a notice of dismissal from the IDHR on or around November 8, 2019; and is filing this suit within 90 days thereof.

### Count 5: Indemnification Against Cook County

75. Salazar realleges all the above paragraphs as if fully set forth here.

76. Because the CCSO is funded by the County, Cook County must indemnify the CCSO against damages, including attorneys' fees, recovered from it by Plaintiff.

### Prayer for Relief

WHEREFORE, Plaintiff, Judith Salazar, requests that the Cook County Sheriff be found liable under Title VII and the Illinois Human Rights Act; that judgment be entered in her favor; that she be awarded all remedies to which she is entitled under the law, including but not limited to injunctive relief, compensatory damages, prejudgment interest, attorney's fees, and costs; and that the Sheriff, the County, or both be ordered to pay the award.

### Jury Demand

Plaintiff demands a jury trial pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

DATED: 12/9/19 Respectfully submitted by:

                                                      s/Julie Herrera

Law Office of Julie O. Herrera
53 W. Jackson, Suite 1615
Chicago, IL 60604
Tel: 312-697-0022
Fax: 312-697-0812
jherrera@julieherreralaw.com